SETH W. WHITMORE *versus* JACOB ALLEY.

A. and B. owned a horse in common. B. took it in possession, under an agreement to return the next week with the horse, and either buy A's half or sell A. his half, but failed to meet his agreement: —
*Held,* that A. cannot maintain an action of *assumpsit* against B. for the value of his interest in the horse: —
*Held,* that there was not a sale or purchase of one-half, but a mere verbal agreement to trade.

ON AGREED STATEMENT.

This was an action of ASSUMPSIT for one-half the alleged value of a certain horse.

Prior to January, 1853, one Samuel Lord got up a lottery, consisting of a variety of personal chattels, among which was the horse in question. The drawing of the lottery took place on Jan. 15, 1853. The defendant had two tickets in the lottery, one of which belonged to his daughter, and, in the first drawing, one of the tickets held by defendant drew the horse. Defendant at the time did not know whether it was his ticket or the one belonging to his daughter which drew the horse, and did not know until subsequently that the successful ticket was his daughter's. Immediately after it was announced that one of the tickets held by defendant had drawn the horse, defendant left the place of drawing and went to Mr. Lord's house, the horse being in Lord's barn. Before the drawing was completed, it was alleged that some error existed, and a new drawing was had. Plaintiff immediately went after the defendant to be present at the second drawing, but defendant declined to return. The second drawing was completed before plaintiff returned, and on his return he was informed that his ticket had drawn the horse. All of the articles drawn, excepting the horse, were delivered according to the second drawing.

The parties then went to the house of Mr. Lord, and it was then agreed by them that they should own the horse in common. Mr. Lord then delivered the horse to the plaintiff and defendant as their joint property. Defendant requested plaintiff to permit him to ride the horse home, and agreed to return with the horse the next week and would either buy the plaintiff's half or sell his half to the plaintiff. To this plaintiff assented, and the defendant then took the horse, but has since refused to return him, or pay plaintiff for the half claimed by him. Within a few days after the drawing, plaintiff called on the defendant to settle the matter, but defendant refused to deliver the horse and forbid plaintiff from taking him, saying that he had nothing to do with the horse and that it was his daughter's ticket which drew him.

*S. Waterhouse*, for plaintiff.

*A. Wiswell*, for defendant.

The opinion of the Court was drawn by

KENT, J.—*Assumpsit* for the value of one-half of a horse.

We may lay out of the question all in the case that relates to the lottery, and the drawing of the horse in question. It is not pretended by either party that any title passed by those transactions.

The case, as between these parties, stands upon the fact that Lord was the undisputed owner, and that he voluntarily, or for some reason satisfactory to himself, parted with his property, and delivered the horse to the plaintiff and defendant, who agreed that they should be joint owners, or owners in common, in equal parts, of the horse. At this stage, neither had the legal right to the exclusive possession, and but one could have such possession at the same time.

It was then agreed that the defendant might take possession of the horse for a time, with the agreement on his part that he would return *with* the horse the next week, and would either buy the plaintiff's half, *or* sell his half to the plaintiff. The case further finds that the defendant has since refused to return the horse, or pay the plaintiff for the half claimed by him.

This action is *Assumpsit.* The writ and declaration, which are made a part of the case, show a claim on account annexed, "for amount due for horse," the money counts, and a special count, which sets out the agreement to have been that defendant was to return the horse *to him*, the plaintiff, on a certain day, and that defendant would then either pay to the plaintiff the *value* of one-half of the horse, or the plaintiff might pay the defendant one half *of the value* of the horse. The allegation of a breach is that he did not return the horse at the day, or since, and has not paid the plaintiff the value of one-half of said horse, or any part; by reason whereof, the defendant *became the buyer* of the plaintiff's interest in said horse, to wit,

one-half, and became liable to pay the value, which is stated to be sixty-two dollars and fifty cents.

The case as stated in the declaration, and the case as it appears in the agreed statement, vary essentially. The allegation in the writ, that defendant was to return the horse *to plaintiff*, is not supported by the agreed statement that he was to return "with" the horse. Nor is the allegation, that, on the return, he was to pay or receive *the value* of one-half of the horse, sustained by the fact agreed, that he was either to buy or sell one-half of the horse. In any light that we can view the case, this action of *assumpsit* cannot be maintained, on the facts agreed. It is not based on the *non-return*. If the facts proved a wrongful conversion by one joint owner as against his co-tenant, then trover would have been the proper remedy. It is unnecessary to determine whether an action of trover could be maintained on the facts agreed. The case, *Dane* v. *Cowing*, 22 Maine, 347, seems to be an authority against such a suit, until a sale by a co-tenant.

The other portion of the agreed statement does not show a sale or purchase of one-half, and this action rests entirely upon a contract of sale and purchase. It was, at most, a verbal promise to trade, or bargain, when they should meet, and either to sell or buy. No sale was made, and none of the *indicia* or legal requirements to constitute a sale appear. No request was made by plaintiff to defendant to determine whether he would sell or buy, and no offer by plaintiff to buy and pay an agreed price, or to sell his part. No price was named, no writing signed, no delivery or acceptance. It is no stronger case in law than one would be where a man says to another, I will come to your house to-morrow and bring my oxen, and we will make a bargain, and I will either buy your oxen or sell you mine. No action could be maintained on such a verbal understanding, which simply looked forward to a possible contract, and left every thing undetermined. It would not be an executory contract, for no contract is made. It would, at most, be a negotiation preliminary to a contract,

of no binding force until legally completed. The fact that the defendant " refused to deliver the horse when requested, and forbade the plaintiff's taking him," cannot make a contract of sale. It might be important evidence of conversion, in an action of trover, where such action would be the proper remedy. *Plaintiff nonsuit.*

TENNEY, C. J., and APPLETON, CUTTING, MAY, and DAVIS, J. J., concurred.